Conrad S. Kee USB# 14916
M. Christopher Moon USB# 14880
JACKSON LEWIS PLLC
215 S. State Street, Suite 760
Salt Lake City, Utah 84111
Telephone: (801) 736-3199
Email: keec@jacksonlewis.com
Email: chris.moon@jacksonlewis.com
*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| TREVOR KELLEY,<br><br>    Plaintiff,<br><br>        v.<br><br><br>PEI WEI ASIAN DINER, LLC, d.b.a. PEI WEI ASIAN DINER<br><br>    Defendant. | Case No. 2:17-cv-00715-DB<br><br>**MOTION TO DISMISS**<br><br>Judge Dee Benson |

Defendant Pei Wei Asian Diner, LLC, by and through its undersigned counsel of record, and in accordance with Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and local rule DUCivR 7-1, hereby moves the Court for dismissal of Plaintiff's complaint against it for failure to state a claim and for lack of subject matter jurisdiction, including due to its failure to exhaust administrative remedies. Further, Defendant requests the Court to award it attorneys' fees and other sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent authority. The specific basis for this motion is more fully discussed in the following memorandum in support of Defendant's motion.

1

## INTRODUCTION

### A.     The Scheme of ADA Lawsuits

Unfortunately, "[t]he ability to profit from ADA litigation has given birth to what one Court described as 'a cottage industry.'" *Molski v. Mandarin Touch Restaurant*, 347 F. Supp.2d 860, 863 (C.D. Cal. 2004) (citing *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1280-81 (M.D. Fla. 2004). Under this scheme, an "unscrupulous" law firm send a disabled individual to as many businesses as possible to look for violations of Title III of the ADA. *Id.* Then, "rather than simply informing a business of the violations, and attempting to remedy the matter through 'conciliation and voluntary compliance,' a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business." *Id.* Faced with the specter of costly litigation, most businesses quickly settle the matter. As the *Molski* court observed, this type of "shotgun litigation undermines both the spirit and purpose of the ADA." *Id.* (citation omitted).

This case is one of hundreds of cases filed across the Western United States, including 278 in Utah alone, over the past several months by an Arizona-based entity. Thus, this lawsuit is a small cog in one of these unscrupulous schemes, with one significant exception. The unscrupulous party behind the curtain is not a law firm but rather an out-of-state corporation that is actually handling this litigation. Evidence demonstrates that the real party in interest in this case is actually an Arizona-based company, Litigation and Management Financial Services, LLC ("LMFS"), that operates by seeking out disabled individuals to act as potential plaintiffs to whom they pay $50 for each filed case, and attorneys, to whom they pay a fee of $100 for each case, essentially for the use of the attorneys' ECF password. LMFS then handles all aspects of litigation and settlement negotiations, including by filing virtually identical complaints using misleading telephone numbers and email addresses that are not those of the attorney whose name

is on the pleading, sending out hundreds of identical emails seeking to settle for $3,900, and retaining all settlement proceeds. (See Ex. L).

This practice has become the subject of hearings in federal court in New Mexico.  In July, Karen B. Molzen, Chief Magistrate Judge of the United States District Court for the District of New Mexico, determined that the plaintiff in New Mexico, who had filed dozens of lawsuits essentially identical to those here in Utah, lacked standing.  The court also found that the practice was "malicious" and for the purpose of "using the judicial process to harass Defendants into settlements to obtain financial gain" rather than for an appropriate purpose.  *Carton v. Carroll Ventures, Inc.*, No. CIV 17-0037 KG/SCY, 2017 U.S. Dist. LEXIS 107135, at *39 (D.N.M. July 10, 2017) (Ex. M).

Moreover, just this past month the Attorney General and Consumer Advocate for the State of Nevada have sought to intervene in the Nevada series of these cases on the basis that the cases are malicious, fiscally motivated, and filed with an objective to obtain monetary settlements rather than the intended purpose of Title III.  Further, the Nevada Attorney General noted that the plaintiff had failed to exhaust the required administrative remedies by providing notice to the state.  (*See* Ex. R).

In light of this sham litigation, and as set forth in more detail below, Kelley lacks standing to pursue this claim.  Due to this lack of standing, Defendant requests that the Court dismiss this matter.

Further, the Court should impose sanctions against LMFS and counsel who has appeared in this case, as they have continued to pursue serial litigation tactics in this and other cases, seeking settlement demands utterly unrelated to the legal work actually performed. Indeed, through Kelley and others, LMFS has filed approximately 236 lawsuits in this Court after a May

3

11, 2017, hearing in which Magistrate Molzen stated that she was considering recommending sanctions over dozens of virtually identical cases filed within the District of New Mexico.  (See Ex. K Tr. 95:10-96:6).  In fact, despite Magistrate Molzen's Recommended Ruling on July 10 finding the lawsuits malicious and harassing (which was presumably received by LMFS because of their apparent control over ECF accounts), LMFS has filed 53 more complaints in Utah, and counsel has taken no action to reclaim his ECF account or to dismiss these lawsuits.  Defendant also requests that the Court enter an interim order directing LMFS and the counsel whose name appears on these filings to preserve all records of their communications among themselves and with individuals that they have recruited or attempted to recruit to serve as Plaintiffs in these matters.

## B.    The Complaint

The Complaint in this matter, filed on June 29, 2017, alleges violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. (ECF No. 2, hereinafter referred to as "Cmplt.").  The complaint is largely the same as the hundreds of other complaints filed by LMFS with the exception of Paragraph 34, where it states what alleged violations were encountered. Those purported barriers to access in this case include: 1) failure to provide accessible parking space signs 60 inches or higher; and 2) failure to insulate water supply and drain pipes under sinks.  (Cmplt. ¶ 34).  As a remedy, the Complaint seeks "declaratory judgment, injunctive relief, attorneys' fees and costs." (Cmplt. ¶ 1).

As set forth in more detail in the Declaration of Cynthia Brown ("Brown Declaration"), the claims asserted in the Complaint are now moot.  Defendant has raised the height of the handicapped parking sign on its premises.  It has also insulated the drain pipes underneath the

4

sinks in its restrooms.   Accordingly, there is no live controversy, and the matter must be dismissed as moot.

## BACKGROUND

1.     The Complaint filed in this present action is one of 107 essentially identical complaints filed in May to July 2017 by Plaintiff Trevor Kelley.  In all 107, James K. Ord, III, Esq. is listed as the attorney of record.  Attached hereto as Exhibit A is a copy of the Pacer Search printout listing all 107 of these cases.

2.      The text of Plaintiff's Complaint in this case is virtually indistinguishable from the complaints filed in all other 106 cases.  The only differences appear to be a change in each defendant's address in paragraph 3, a change to the dates in paragraphs 12 and 33, and a modification of non-compliant barriers in paragraph 34.  A copy of another of the complaints listed on Exhibit A, from the case *Kelley v. JJ of Broadway*, 2:17-cv-00692-DN, is attached as Exhibit B.

3.     Plaintiff's 107 Complaints are also essentially identical to 149 additional complaints filed in the past four months by attorney Michael P. Studebaker, Esq. on behalf of purported plaintiff Samuel Burningham.  In 120 cases, Samuel Burningham is named as the plaintiff; in the other 29 Sam Burningham is plaintiff.  In all 149 cases, Michael P. Studebaker, Esq. is listed as the attorney.  The two Pacer Search printouts for the 149 cases filed by Burningham since May 4, 2017, are attached as Exhibit C.  Other than the omission of paragraph 35, the Burningham complaints again differ only by changing the defendant's address in paragraph 3, changing the dates in paragraphs 12 and 33, and the list of specific non-compliant barriers in paragraph 34.  A copy of one of the complaints listed on Exhibit C, the case *Burningham v. Toys R Us*, Civil Action No. 2:17-cv-00672-JNP, is attached as Exhibit D.

4.      Plaintiff's 107 Complaints are also essentially identical to 22 Complaints filed by Jonathan Felt, Esq. on behalf of purported plaintiff Tammy Shelton.  The Pacer Search printout for the 22 cases filed for Shelton since May 9, 2017, is attached as Exhibit E.  Again, the primary difference is that the Felt/Shelton complaints change the defendant's address in paragraph 3, change the dates in paragraphs 12 and 33, and the list of specific non-compliant barriers in paragraph 34. A copy of the most recent Felt/Shelton complaint listed on Exhibit E from the case *Shelton v. Deerwood Properties Utah*, Civil Action No. 1:17-cv-00104-DB, is attached as Exhibit F.[1]

5.      In response to initial efforts to directly contact James Ord, designated as Plaintiff's counsel in this case, counsel for Defendant received the email message attached hereto as Exhibit G that attached a letter purporting to be from Ord that instructed all communication should be through email and conveyed a settlement demand of $3,900.00.  That message also included several pictures, presumably taken by LMFS.  The attached photos purport to depict the alleged violations in the Complaint, including the handicapped parking sign height and lack of insulation on vanity pipes.

6.      Attached hereto as Exhibit H is the Declaration of Cynthia Brown, the General Manager of the Pei Wei location at issue, explaining that the alleged non-compliant issues have been remedied as of August 28, 2017.  Accompanying her declaration are pictures of the handicapped parking sign in front of the restaurant and the sinks in the restrooms, both showing compliance.  As such, the violations alleged in Plaintiff's Complaint have been fully voluntarily remedied.

---

[1] Further demonstrating the interconnected nature of these lawsuits, Attorney Felt has withdrawn from his representation of Shelton in the 17 Shelton actions that are still pending.  In each open case where Felt has withdrawn, Attorney Ord has appeared in his place as counsel for Shelton.

7.      Attached hereto as Exhibit I is the email response received by Defendant's counsel in one of the 149 ADA cases filed by Studebaker/Burningham as described in paragraph 3 above. It is similar in all material respects to the settlement demand letter received in this case.

8.      Attached as Exhibit J are two emails filed in the United States District Court of New Mexico involving email responses received by counsel in matters before that Court in lawsuits also surreptitiously pursued by LMFS.  They are in all material respects remarkably similar to the emails described above and are purportedly authored by Ashley Iannacone, the same person who sent the emails identified in Exhibits G and I and referenced in paragraphs 5 and 7 above.

9.      Attached as Exhibit K is a transcript of the May 11, 2017 hearing held by Magistrate Judge Molzen pertaining to the dozens of materially identical lawsuits filed in the District of New Mexico.

10.      Attached as Exhibit L is an order in which Magistrate Judge Molzen directed the publication of Agreements between LMFS, the purported Plaintiff, and strawman counsel, along with those agreements and an email from Craig Broadbent on behalf of LMFS, acknowledging his awareness of the New Mexico proceedings.

11.      Attached as Exhibit M is the July 10, 2017 Report and Recommendation of Magistrate Judge Molzen, in which she recommends to the Chief Judge of the District of New Mexico that the cases be dismissed with prejudice as they are malicious and filed for an improper purpose to use the judicial process to harass defendants into settlement.  *Carton v. Carroll Ventures, Inc.*, 2017 U.S. Dist. LEXIS 107135 (D.N.M. July 10, 2017).

12.     Attached as Exhibit R is an August 8, 2017, Motion to Intervene filed by the Attorney General of Nevada in one of the 275 cases that LMFS has caused to be filed within the District of Nevada.

## ARGUMENT

## I.     THE STANDARD FOR EVALUATING A MOTION TO DISMISS

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the truth of a plaintiff's well-pleaded allegations is assumed and those allegations are viewed in a light favorable to plaintiff. *See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).   However, dismissal is proper if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969, 1974 (2007). To survive a motion to dismiss, a plaintiff must provide more than labels, conclusions, and a formulaic recitation of the elements of a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise the right to relief above the speculative level." *Id.*

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015) (explaining that Rule 12(b)(1) motions may facially or factually challenge subject matter jurisdiction, and that courts may consider affidavits and other documents when addressing a factual attack).  When reviewing a factual attack on subject matter jurisdiction, the court may not presume the truthfulness of the complaint's factual allegations, and has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT BECAUSE THE CLAIMS ASSERTED ARE MOOT.

Under Title III of the ADA, a litigant can bring an action only for injunctive relief to compel correction of a non-conforming barrier.  *See Rhodes v. S. Nazarene Univ.*, 554 F. App'x 685, 690 (10th Cir. 2014) ("Title III … provides for only injunctive relief and not compensatory damages. See 42 U.S.C. § 12188(a)(1))."  Thus, "[b]ecause a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (internal citations omitted).  It is well-settled within the Tenth Circuit that "[a] claim for injunctive relief is moot absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.  *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal citation omitted).  Accordingly, where the wrongful behavior could not reasonably be expected to recur, the voluntary cessation of defendant's allegedly wrongful conduct will moot a plaintiff's claim.  *Id.* at 1037.  Where a defendant makes permanent changes to fix alleged ADA violations, a case is mooted.  *See Chambers v. Melmed*, 141 F. App'x 718, 720 (10th Cir. 2005) (holding that an ADA claim was moot, because the changes to correct the allegedly unlawful conduct were permanent in nature); *see also Moore v. Fatemah Saniefar,* No. 1:14-cv-01067-SKO, 2017 U.S. Dist. LEXIS 46938, at *17 (E.D. Cal. Mar. 28, 2017) ("[t]his voluntary remediation of the alleged barriers indicates that Plaintiff's ADA claim is moot.").

In accord with this well-established rule of law, Plaintiff's claims in this matter must be dismissed because they are moot. As detailed in the Brown Declaration and its accompanying photographs, both of the purported barriers to access have been permanently fixed.  First, the

handicapped parking sign at the Sandy Pei Wei location has been raised to a height of the bottom being at least 60 inches from the ground surface.  (*See* Ex. H).  Second, insulation has been permanently affixed to the drain pipes under the restroom sinks.  (*See Id.*).  Thus, there is no live controversy because the case has been mooted by Defendant's voluntary compliance.

Not only is there no present violation of the ADA upon which Plaintiff's Complaint can be based, but there is no evidence that there is any danger of future non-compliance. Rather, as stated in the Brown Declaration, Defendant is committed to ADA compliance and, as was the case here, as soon as Defendant is made aware of any non-conforming use in any of its facilities, it promptly implements corrective action, and expects all its employees to assist in making certain those improvements remain in place.  (*See Id.*).

Accordingly, there is no actual controversy currently present upon which Plaintiff's claims can be founded. The Complaint is, therefore, moot and must be dismissed for lack of subject matter jurisdiction and because it fails to state a claim upon relief may be granted.

I.    **THE PLAINTIFF LACKS STANDING TO PURSUE INJUNCTIVE RELIEF**

Plaintiff lacks standing to pursue injunctive relief.  To have standing, Plaintiff must establish three elements.  First, Plaintiff must suffer an "injury in fact" that is actual or imminent." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1210-11 (10th Cir. 2014), citing *Colorado Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the injury must be fairly traceable to the challenged action of the defendant. *Id.*  Third, it must be likely that the injury will be redressed by the relief requested. *Id.*  When a plaintiff, such as here, seeks prospective relief such as an injunction, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).  As the *Tandy* court explained,

10

"[s]peculative, 'someday' intentions do not support standing to seek prospective relief" in the context of a Title III lawsuit. *Id.*, citing *Defenders of Wildlife*, 504 U.S. at 564.

As an initial matter, Plaintiff lacks standing because his conclusory assertion that he "will avail himself of the good and services offered at the PPA in the future" (Cmplt. at ¶ 13) is a legal conclusion masquerading as factual allegation. This court is not obligated to accept as true a legal conclusion couched as a factual allegation. *See Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1362 (D. Utah 2014), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But even if it were, Plaintiff's bare-bones allegations are the exact type of "speculative, someday" intentions that are insufficient to support standing based on a request for prospective relief.

Additionally, Plaintiff obviously has not suffered any injury as a consequence of the ADA violations he has alleged in this case. Most assuredly, he is not "suffering a continuing injury or [is] under a real and immediate threat of being injured in the future." *Tandy, supra.* 380 F. 3d at 1284. Rather, as is evident from his own pictures, Plaintiff Kelley was inside of Defendant's store, and thus he obviously was not prevented from accessing the premises by any failure to comply with ADA guidelines. As observed by the court in *Strong v. Johnson*, No. 16cv1289-LAB, 2017 U.S. Dist. LEXIS 7085, at *7 (S.D. Cal. Jan. 17, 2017):

> But because he has been to the store, he apparently already knows which space or spaces are van-accessible. If he knows this, an injunction ordering the Defendant to tell him what he already knows would afford him no meaningful relief. It could of course help other disabled people, but binding precedent makes clear Strong has no standing to seek relief on their behalf. *See Chapman*, 631 F.3d at 949 ("Article III, however, requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties.").

Finally, Plaintiff's naked assertion that he plans to return to the property at issue is belied by the sham nature of this litigation. Indeed, the real party in interest in this dispute is not Kelley. Rather, he is little more than a "pawn," paid a fee of $50 to ride along and be

11

photographed in possible targets for a scam to extort attorneys' fees from unsuspecting businesses. The real party in interest here is LMFS, which has filed hundreds of sham lawsuits in the Western United States in the past few months using paper plaintiffs and complicit attorneys who authorize LMFS to use their ECF passwords to file documents.

In May 2016 Magistrate Judge Molzen issued an Order to Show Cause why the dozens of materially identical cases filed in the District of New Mexico should not be dismissed as frivolous or malicious.  Following that Order, Magistrate Judge Molzen conducted an evidentiary hearing that involved testimony from the plaintiff in that case as well as the attorney under whose name the cases had been filed.  After hearing the evidence, she stated:

> THE COURT: Also, I have concerns about whether Sanctions should be imposed. Those sanctions at this time I don't see going against you [referring to the named plaintiff in that matter].  However, Ms. Pomeranz [the plaintiff's attorney in that matter], I need to advise you that I have concerns with regard to testimony that you gave at the previous hearing. I have concerns with how this litigation has been managed by an undisclosed, until these hearings, organization, and it's presumed, or at least it appears, past ties to a different organization, AID,[2] which has been sanctioned and has been investigated by other State Attorney Generals' offices. And so I need to advise you that I am also considering whether I should recommend to Chief Judge Armijo that sanctions be imposed pursuant to 28 U.S.C.  Section 1927. Those sanctions  may be awarded when an  attorney  is cavalier or bent on misleading the Court intending acts without a plausible basis or when the entire course of proceedings was unwarranted. Those are some of my concerns that I'm looking at, and I need to make sure that you understand you do have an opportunity to respond to my consideration of that. That's your due process right. But also, again, we have a lot of defendants who have had to incur fees and costs in defending these actions. I also am concerned about deterring any future kinds of litigation under the model that has been expressed by Ms. Pomeranz and by you here today.

---

[2] AID stands for Advocates for Individuals with Disabilities Foundation, Inc.  AID is the subject of several fee orders in the United States District Court for the District of Arizona and is also the subject of motions for sanctions by the Arizona Attorney General and pending fee applications in the Superior Court of Arizona, for the County of Arizona, Case No. CV2016-090506.   Copies of many related court documents involving AID are at https://www.azag.gov/press-release/judge-dismisses-more-1000-lawsuits-targeting-small-businesses.    These documents establish that the same individuals involved with LMFS, including Craig Broadbent, Alex Callan, and Ashley Iannacone, are also repeatedly referred to in the AID documents.  In fact, Mr. Broadbent is admitted to the United States District Court for the District of Arizona, and is identified as an attorney for "Advocates for Individuals with Disabilities."  See Ex. Q.

Ex K, Tr. 95:10-96:13.

Essentially, the testimony in that consolidated hearing established that LMFS placed ads in internet sources such as Craigslist or Indeed.com to look for potential plaintiffs and attorneys. Once LMFS identified those individuals, they entered into agreements with the plaintiff and the attorney that are, at a minimum, deeply troubling.  For example, the plaintiff in the District of New Mexico cases indicated that Craig Broadbent, an attorney associated with LMFS, drove her from location to location looking for possible ADA violations.  (Ex. K at 22:6-15; 78:1-12). Despite the conclusory allegation in that lawsuit that plaintiff was a patron who intended to return to the places of business that she had sued, the plaintiff in the New Mexico lawsuit made clear that she only went as a "tester" and not as a customer to the stores that she sued.  (Ex. K at 25:12-22).  Moreover, she also conceded that she did not have a "concrete plan" to return to any of the locations, but rather had only vague intentions to do so.  (Ex. K at 25:23 to 26:16).  *See Carton*, 2017 U.S. Dist. LEXIS 107135, at *31-34 (describing why the plaintiff in those cases lacked standing).

After learning of the Agreements in the hearing and reviewing them in camera, the Court ordered the Agreements to be filed in all the New Mexico matters.  (Ex L).  The content of the Agreements with LMFS are astounding.  Under the agreements, LMFS pays the paper plaintiff $50 for each complaint filed.  LMFS contracts to pay the attorney a $100 fee for each lawsuit filed, purportedly on behalf of the plaintiff.  In return, the attorney agrees to pay LMFS *"the full amount of any Monetary Recovery obtained through settlement."*  Further, the attorney agrees that "Company shall purchase and maintain a new telephone number and e-mail address for Attorney in order to communicate and settle ADA actions with Defendant or Defendant's attorney.  As required by local rules, Attorney's name, address, new telephone number and new

e-mail address shall appear in every filing with the Court.  Attorney's new telephone number and new e-mail address shall be implemented in each case through the Company's selection of an appropriate number and e-mail address."  (Ex. L, p. 22, ¶ 2.C).  The agreement further provides "[u]pon the filing of a new complaint and the completion of service of process, Defendant or Defendant's Attorney is expected to contact Attorney.  The contact will be made through Attorney's assigned paralegal or other staff who will answer the new phone line and the new address and commence negotiations."  (Id., ¶ 2.D).  As Magistrate Molzen noted in her recent report and recommendation, the attorney and LMFS "tried to manufacture" standing.  *Carton*, 2017 U.S., Dist. LEXIS at *31.

In the instant matter, when LMFS filed the Kelley Complaint with the Court, it used the email James@utahadalaw.com and the telephone number of 435-214-1433.  *See* Complaint.  In reality, counsel's website identifies his email address as James.ord@theordfirm.com and his telephone number as (801) 997-0442.  (*See* Ex. N).

At least two other attorneys practicing before this court have apparently also entered into agreements with LMFS.  For example, when LMFS filed dozens of lawsuits using Sam/Samuel Burningham as the purported plaintiff and listing Michael Studebaker as counsel, it used the email of mike@utahadaadvocates.com and the telephone number (385) 200-9901.  But on his website, Mr. Studebaker identifies his email address as Mike@studebakerlaw.com and his telephone number as (801) 627-9100.  (*See* Ex. O).

Likewise, when LMFS filed over 20 lawsuits using Tammy Shelton as the purported plaintiff and listing Jonathan Felt as counsel, it used the email address of jfelt@ut-ada.com and the telephone number of (801) 609-9901.  In reality, Mr. Felt's email address is jfelt@jfeltfamilylaw.com and his telephone number is (801) 690-4904.  (*See* Ex. P).

14

Further, when counsel calls the misleading phone numbers, they receive a materially identical voicemail instructing the use of email.  Moreover, when counsel emails the attorney listed on the complaint, they receive emails back from the purported "legal assistant" rather than the attorney.  *See* Exs. G, I.  As counsel testified in the New Mexico matter, the email addresses on the complaint were "shared" with LMFS.  (Ex. K, Tr. 69:24-25).

Thus, when an attorney representing a party uses the information on the complaint that is required under DUCivR 10-1(a) to contact counsel for the plaintiff, he or she is actually directed to the staff of LMFS in the Phoenix area.  Presumably, when the drafters of DUCivR 10-1(a) imposed the requirement of providing telephone and email on documents filed with the Court, they intended that attorneys would use their own telephone numbers and email addresses rather than numbers and email addresses created solely for the purpose of directing a party to contact someone in a corporate office in Phoenix "who will answer the new phone line and the new address and commence negotiations."  (Ex L, p. 22, ¶ 2.D).  Notably, for matters involving Mr. Kelley as the purported plaintiff, the ECF filings include sydney@utahadalaw.com and the ECF filings involving Mr. Burningham as the purported plaintiff include sydney@utahadaadvocates.com.  Similarly, the ECF filings involving Ms. Shelton as the purported plaintiff include sydney@ut-ada.com.  Indeed, Mr. Felt was not admitted to practice before this Court until April 28, 2017 and presumably did so solely for the purposes of facilitating LMFS' use of his ECF registration and name.  And further demonstrating the interconnected nature of all of these cases is that Mr. Felt has been substituted as counsel with Mr. Ord in all of the Shelton lawsuits.

Consistent with the provision in the agreements that LMFS will receive "the full amount of any Monetary Recovery obtained through settlement," LMFS drafts and files the complaint,

"conduct[s] settlement discussions," "settle[s] cases," and will "draft[]and fil[e] a motion for preliminary injunction, motion for default judgment, motions for judgment on the pleadings, motion for summary judgment, and responses to Defendant(s)' motions."  (Ex. L, ¶ 3).  While the agreement suggests the attorney should conduct a review of the initial documents, the reality is that there is no material difference between the complaints filed by LMFS whether they file using the names of, Mr. Kelley, Mr. Burningham or Ms. Shelton or whether they file using the ECF login information of Mr. Ord, Mr. Studebaker, or Mr. Felt.  Compare, e.g, Exs B, D, and F with the Complaint in this case.  As Magistrate Molzen observed, the attorney in that case "made little effort to ensure that the factual contentions in the Complaints had evidentiary support." *Carton*, 2017 U.S., Dist. LEXIS at *19.  Likewise, given the substantial similarities between Kelley's complaints and those filed here in Utah and elsewhere, it appears unlikely that Mr. Ord made any substantive effort to verify the factual allegations drafted by LMFS.

Once an attorney seeks to contact Mr. Ord using the spoof email address, he or she immediately receives a form email purportedly from Ms. Iannacone or another individual such as Laurie Reiter.[3]  Each email is substantially the same and seeks to settle for $3,900.  See, e.g., Exs. G,I and J.  Obviously, taking into account the similar nature of the emails, involving different plaintiffs in different states, all with different attorneys, and the nature of the Agreements, the attorneys who are listed as counsel in the various pleadings are not supervising the legal assistants who are doing the work.  Moreover, considering that counsel received $100 and the complaints are all materially identical, no attorney could construe $3,900 to comply with the ethical fee requirements under the Utah Rules of Professional Conduct.

---

[3] Internet searches suggest that both Ms. Iannacone and Ms. Reiter are located in Mesa, Arizona.

In sum, it is readily apparent that Kelley is but a pawn in LMFS' business model and has no standing to pursue injunctive relief.  As noted in the New Mexico case, it appears that individuals such as Kelley are recruited through Craigslist or other internet postings.  They are then driven from place to place by a "Tester's Assistant" to use the terminology of the Agreements (which in the New Mexico case appeared to be Attorney Broadbent, who seems to be secretly involved or controlling the litigation).  (*See* Ex. L).  The case is then filed by LMFS using a Utah attorneys' ECF login for the sole benefit of LMFS as it receives the "full amount of any Monetary Recovery obtained through settlement." (Ex. L p. 19, ¶ 7.a).

After a hearing regarding the New Mexico cases filed by LMFS, Chief Magistrate Molzen recommended a ruling that the straw plaintiff in that case lacked standing.  Further, Chief Magistrate Molzen recommended that the cases be dismissed "with prejudice as malicious because they were primarily filed for an improper purpose," namely "to harass Defendants into settlements to obtain financial gain for [the attorney officially appearing in that case] and LMFS."  *Carton*, 2017 U.S. Dist. LEXIS at *39.  There has been no objection to that recommendation, as of this date, and in light of LMFS control of the New Mexico litigation they should be bound by this ruling.  In accord with Magistrate Molzen's recommendation, this Court should find that Kelley lacks standing to pursue his claims.

## II.   PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES. ALTERNATIVELY, THIS COURT SHOULD REFER THE MATTER TO THE COMMUNITY RELATIONS SERVICE.

Title III's enforcement provision states that the "remedies and procedures" set forth in Section 2000(a)-3(a) of the Civil Rights Act of 1964 "are the remedies and procedures of this subchapter."  42 U.S.C. § 12188.  Within Section 2000a-3, Section 2000a-3(a) sets forth the remedies for discrimination, authorizing aggrieved parties to commence a civil action for

17

injunctive relief.  The *procedures* to follow are set forth in Section 2000a-3(c), which imposes a pre-suit notice requirement on claims for relief under Section 2000a-3.  *See* 42 U.S.C. 2000a-3. One of the reasons that the Nevada Attorney General moved to intervene in the lawsuits brought by LMFS in Nevada is that the failure to exhaust administrative remedies impacted that state's "quasi-sovereign interest in securing the observance of the terms under which is participates in the federal system."  (Ex. R at 9).  As in Nevada, Plaintiff has failed to exhaust administrative remedies, and thus has denied the State of Utah "its proper participation in the ADA's enforcement scheme."  (*Id.* at 10).

Under Section 2000a-3(c), where the alleged act of practice of which an individual complains is prohibited by state or local law, "no civil action may be brought … before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person."  42 U.S.C. § 2000a-3(c). Thus, "Congress has imposed a state law exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA."  *Howard v. Cherry Hills Cutters*, 935 F. Supp. 1148, 1150 (D. Colo. 1996).  Utah law provides that a person with a disability "has equal rights to accommodations … [in] hotels, motels, lodges, and all others places of public accommodation in this state."  *See* Utah Code 62A-5b-103.  Accordingly, Utah has a law that prohibits discrimination against disabled individuals with respect to places of public accommodation.[4]  Therefore, Plaintiff's lawsuit must be dismissed, because he has failed to comply with the applicable state law exhaustion requirement set forth in 42 U.S.C. § 2000a-3.

---

[4] While the disability public accommodation section of the Utah Code does not directly address to which state authority notice should be given, a corresponding Section addressing race and other forms of discrimination in places of public accommodation makes clear that individuals should make an application to the state attorney general, who shall "investigate and seek to conciliate the matter."  *See* Utah Code 13-7-4.

*See Howard*, 935 F. Supp. at 11150; *see also Lillard v. Sunflower Farmers Mkt., Inc.*, No. 12-cv-1497-JLK, 2012 U.S. Dist. LEXIS 168083, at *2-4 (D. Colo. Nov. 27, 2012).

Alternatively, if this Court determines that notice was not required, this case should still be removed from the Court's current docket.  Under Section 2000a-3(d), if there is no State or local law that prohibits the alleged discrimination, then a civil action may be filed.  However, the Court may "refer the matter to the Community Relations Service established by subchapter VIII of this chapter for as long as the court believes there is a reasonable possibility of obtaining voluntary compliance …."  Here, the alleged violations in the Complaint, including regulatory height violations of handicapped parking signs and insulation of a sink, should be relatively easy to address through voluntary compliance – particularly since they have already been addressed. Referral to the Community Relations Service would therefore be appropriate in the absence of dismissal.

## III.    THE COURT SHOULD AWARD SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

This case cries out for imposition of sanctions under 28 U.S.C. § 1927[5] or through the Court's inherent power for needlessly multiplying these proceedings.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (affirming federal court's inherent power to impose sanctions in the form of attorney's fees and expenses totaling almost $ 1 million against party who litigated in bad faith).  As the Tenth Circuit has explained, "any conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable" under Section 1927.  *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008),

---

[5] 28 U.S.C. § 1927 provides:

Any attorney . . . who so multiplies the proceedings . . . unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

citing *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987) (en banc).  Section 1927 does

not require a motive involving bad faith.  *Id.*  The Court also has the inherent power to issue

sanctions for bad-faith conduct that is an abuse of the judicial process.  *See Farmer v. Banco*

*Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015).

The reckless, knowing, and bad faith conduct by the counsel who purportedly signed

these pleadings is fairly obvious. They each entered into Agreements that:

- permitted a non-attorney corporate entity in a different state to use their ECF account to file documents containing misleading contact information,

- allowed the non-attorney corporate entity and its non-attorney employees to communicate legal theories and seek to settle claims,

- knowingly permitted that non-attorney corporate entity to seek $3,900 in a settlement demand even though it far exceeded any reasonable attorney fee, and

- permitted that non-attorney corporate entity to file pleadings in federal court under the name of the attorney.

Indeed, it presumably would have taken counsel only a few moments of due diligence to

investigate the individuals he was dealing with and to discover that they were the subject of

extensive publicity in Arizona regarding allegations of impropriety, motions for sanctions,

potential imposition of awards for attorney's fees, and litigation by the Arizona Attorney

General.

Obviously, before this case was filed, counsel as well as LMFS, including attorney Craig

Broadbent, would have been aware that the Magistrate Judge Molzen had consolidated the cases

filed in New Mexico by LMFS and issued an order to show cause why they should not be

dismissed.  Perhaps, however, counsel as well as LMFS, including attorney Craig Broadbent,

simply chose to proceed on the comforting thought that LMFS' role and the terms of the

Agreements remained secret.

After May 11, 2017, however, the conduct of counsel as well as LMFS, including attorney Craig Broadbent, was beyond reckless.  Certainly, LMFS and the counsel with the ECF account that was used for this lawsuit were aware by May 12, 2017 that Magistrate Judge Molzen had stated she was "considering whether [she] should recommend to Chief Judge Armijo that sanctions be imposed pursuant to 28 U.S.C. Section 1927."  Ex. L. Moreover, Chief Magistrate Judge Molzen stated:

> I have concerns with how this litigation has been managed by an undisclosed, until these hearings, organization, and it's presumed, or at least it appears, past ties to a different organization, AID, which has been sanctioned and has been investigated by other State Attorney Generals' offices.

*Id.* at Tr. 95:15-20; *see also Carton*, 2017 U.S. Dist. LEXIS 107135, at *6 ("It appears, however, that LMFS is somehow affiliated with another organization, Advocates for Individuals with Disabilities Foundation ("AID")").

Presumably, Mr. Broadbent and/or others from LMFS informed Mr. Ord and Mr. Studebaker of the outcome of that hearing and the fact that New Mexico counsel and the Plaintiff there chose to voluntarily dismiss all their actions with prejudice.[6]  Presumably, Mr. Broadbent and/or others from LMFS also informed Mr. Ord, Mr. Studebaker and Mr. Felt that while all of the New Mexico cases were going to be dismissed, there was still a pending issue of attorneys' fees awards for the defendants in those cases.  Indeed, one presumes Mr. Ord would have an obligation to advise Mr. Kelley of the risks of continuing to pursue litigation in light of the District of New Mexico decision.

Yet, following Chief Magistrate Judge Molzen's warnings, counsel appeared in this present matter and LMFS filed this lawsuit.  Further, they sent yet another of their boilerplate

---

[6] Mr. Felt has dismissed at least one of the matters with prejudice after learning of the New Mexico rulings.

settlement demands seeking $3,900 to resolve this case, knowing that the cost to defend this case will certainly exceed $3,900.  Moreover, since the New Mexico hearing, LMFS has filed 236 additional cases in Utah under the names of the three different plaintiffs, using the ECF login information of Mr. Ord, Mr. Studebaker, and Mr. Felt, all containing false and misleading information regarding the contact information for the attorneys.  In fact, even after the Recommended Ruling from Chief Magistrate Molzen finding their approach to be malicious and harassing, they have filed an additional 53 lawsuits.  Apparently, they made the knowing decision that the lure of $920,400 in potential settlements from these 236 additional cases outweighed the risk that these issues would come to light and that they might face sanctions, as many Defendants may prefer to pay $3,900, rather than incur the costs of litigation.[7]

This kind of conduct cannot be allowed. The Court should award sanctions against all counsel involved in this matter on behalf of the Plaintiff and/or LMFS with such sanctions to fully compensate Defendant for the cost of defending this matter.  Such sanctions are appropriate in light of the terms of the Agreement, the deceptions to the Court and the public, the settlement demands that do not remotely reflect recoverable attorney's fees, the practice of law by an out of state corporation, the continued pursuit of this lawsuit after the District of New Mexico hearing, and the knowing filing of approximately 236 lawsuits in Utah since the warning from the Chief Magistrate Judge.

## CONCLUSION

For the reasons discussed herein, Defendant respectfully requests dismissal of all claims brought against it by Plaintiff, along with an award of attorney's fees, sanctions, and further

---

[7] Indeed, although impossible to know for certain that the cases have settled or the amount of any such settlement, we note that dozens of the lawsuits filed within this district over the past four months by LMFS and its attorneys have been closed.  (*See* Exs. A, C, E).

relief as this Court deems appropriate.   Alternatively, Defendant requests that the case be referred to the Community Relations Service.

Respectfully submitted this 28th day of August, 2017.

_____/s/ Conrad S. Kee_____
Conrad S.  Kee USB# 14916
M.  Christopher Moon USB# 14880
JACKSON LEWIS PLLC
215 S.  State Street, Suite 760
Salt Lake City, Utah 84111
Telephone:  (801) 736-3199
Email: keec@jacksonlewis.com
Email: chris.moon@jacksonlewis.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of August, 2017, I filed a true and correct copy of the foregoing Motion to Dismiss via CM/ECF, which will send an email notification to the following:

James K. Ord, III (14007)
THE ORD FIRM
PO Box 16266
Salt Lake City, UT
(435) 214-1433
james@utahadalaw.com
*Attorney for Plaintiff*

            _____/s/ Conrad S. Kee_____
            For Jackson Lewis PLLC

4840-6109-8062, v. 5